**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Y.V., *by her guardian ad litem*, SCOTT A. KRASNY, ESQ., <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES *et al.*, <br><br> Defendants. | Civil Action No. 21-18770 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants New Jersey Department of Children and Families ("Children Services"); Allison Blake ("Blake"), the Commissioner of Children Services; Julie Corbley ("Corbley"), a Family Service Specialist for Children Services; and New Jersey Division of Child Protection and Permanency's ("Child Protection") (collectively, "Defendants") Motion to Dismiss Plaintiff Y.V.'s Complaint.[1] (ECF No. 6.) Y.V. opposed (ECF No. 7), and Defendants replied (ECF No. 14). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' Motion.

**I.   BACKGROUND**

This is a case about a minor child that allegedly suffered neglect, physical assault, and sexual abuse while residing in a state-sponsored resource home. In 2015, Children Services

---

[1] Because she is a minor, Y.V. is referenced by her initials.

removed Y.V., a three-year old child, from her birth mother's household. (Compl. ¶¶ 13-14, ECF No. 1-1.) From what the Court can glean from the Complaint, Children Services and Child Protection determined that Y.V. needed to be relocated for her safety and placed her into the resource home of Defendant Deborah Crudup ("Crudup") in January 2015.[2] (*Id.*) The Complaint does not allege any facts from which the Court could infer that Children Services should have known Crudup's home was unsuitable. (*See id.* ¶ 29.)

Y.V. had a maternal grandfather ("Grandfather") who, on at least one occasion, spent time with Y.V. after her placement into Crudup's home. (*Id.* ¶ 18.) On an unspecified date and time, Grandfather noticed "bruises on [Y.V.'s] lower back" and that she "was having severe behavior[al] problems." (*Id.*) The Complaint provides no details as to whether Grandfather told anyone about his observations of Y.V. In February 2015, however, Grandfather filed several motions in state court to intervene in the foster care process and obtain custody of Y.V. (*Id.* ¶ 19.) Several months later, in April 2015, the New Jersey state court granted Grandfather's custody request. (*Id.* ¶¶ 18, 22.) Absent from the Complaint are allegations that Grandfather informed Child Protection or Children Services of his concerns with Crudup's home before he obtained custody. After he obtained custody, Grandfather took Y.V. to his residence in Spring, Texas. (*Id.* ¶ 25.) It was only then that his suspicions furthered. (*Id.* ¶ 26.) First, when picking up Y.V. to travel with him to Texas, Grandfather noticed that Y.V.'s sippy cup had mold in it and her clothes were in garbage bags. (*Id.*

---

[2] Although a named defendant, Crudup never appeared in this action. Instead, Y.V. moved for default judgment, claiming Crudup was evading service and therefore the Court should waive service. (*See generally* Heyesey Aff., ECF No. 9-1.) Until the Court rules on Y.V.'s motion to excuse service or Crudup is properly served, however, it does not have jurisdiction over Crudup. *See* Fed. R. Civ. P. 4(k) (establishing personal jurisdiction when a defendant is served); *Domitrovich ex rel. Domitrovich v. Aetna, Inc.*, No. 18-1403, 2019 WL 2085993, at *5 (W.D. Pa. May 13, 2019) ("If the plaintiff fails to properly serve the defendant, and the defendant does not waive service, the court does not have personal jurisdiction and must dismiss the complaint against defendant.").

¶ 24.) Then, after arriving in Texas, Y.V. made comments to Grandfather that suggested a boy or man may have sexually assaulted and abused her while she was living in Crudup's home. (*Id.* ¶ 27 ("Three year old [Y.V.] also told [Grandfather] that a boy tried to put his 'kuca' in her face; a boy 'put his kuca in her kuca'[;] and someone she resided with threatened to cut her hair off.").) Compounding Grandfather's fears, he noticed that Y.V. had bruising all over her body. (*Id.* ¶ 26.) And worst yet, Y.V.'s recent (and uncharacteristic) behavioral problems crystalized, which included having nightmares, throwing tantrums, becoming violent with teachers at daycare, and covering herself with a blanket at night while putting her hands between her legs. (*Id.*) Grandfather took Y.V. to psychotherapy where she was diagnosed with Post Traumatic Stress Disorder. (*Id.* ¶ 28.) Over a month after Grandfather brought Y.V. to Texas, in May 2015, it appears that an unidentified individual finally informed Children Services that Y.V. was abused by someone at Crudup's residence. (*Id.* ¶ 29.) There are no allegations that, up until that point, Children Services or Child Protection had any reason to believe Crudup was a risk to children or that Y.V. was abused while in her home.[3] (*See generally* Compl.) Indeed, the Complaint provides no additional information of the events at issue.

Once the abuse came to light, Y.V.'s *guardian ad litem* sued Children Services, Blake, Corbley, Child Protection, and Crudup. (*Id.* ¶¶ 1-11.) Y.V. alleges that Defendants (1) violated her due process rights under both the U.S. Constitution and the New Jersey Constitution; (2) violated

---

[3] The Court is unable to entertain new facts alleged in Y.V.'s opposition brief to this Motion, including an allegation that the Department of Children and Families Institutional Abuse Investigation Unit learned of Y.V.'s abuse in Crudup's home as early as January 23, 2015. (Pl.'s Opp'n Br. *2, *4, *16, ECF No. 7. *See Schiavo v. Carney*, 548 F. Supp. 3d 437, 441 n.3 (D. Del. 2021) ("This information is not contained in the Complaint . . . and is raised for the first time in Plaintiff's opposition to the motion to dismiss. Plaintiff may not amend [her] complaint through [her] opposition brief, and these new facts may not be considered by the Court on the instant motion to dismiss.").) This allegation is not found within the four corners of the Complaint, and thus the Court may not consider it here. *Carney*, 548 F. Supp. 3d at 441 n.3.

the Child Placement Bill of Rights Act; (3) violated the Child Sexual Abuse Act; and (4) were negligent in their screening and monitoring systems.[4] (*See generally id.*) Defendants then removed this case to federal court. (Defs.' Notice of Removal, ECF No. 1.) Subsequently, they moved to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[5] (Defs.' Moving Br., ECF No. 6.) Defendants invoked the Court's federal question jurisdiction. (Defs.' Notice of Removal ¶ 10 (citing 28 U.S.C. § 1331).) Y.V. does not challenge Defendants' removal or the Court's jurisdiction.

## II.   LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). But the court may ignore legal conclusions or

---

[4] Y.V. alleges Defendants (through group pleadings, not individually) failed to meet the statutory requirements for placing minors in a resource home. (*See* Compl. ¶ 34.) But simply reciting the elements of a statute falls short of pleading facts that support a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, it is settled law that group pleadings are insufficient as a matter of law. *Pushkin v. Nussbaum*, No. 12-324, 2017 WL 1591863, at *7 (D.N.J. Apr. 28, 2017) (finding that group pleading is impermissible).

[5] Hereafter, references to "Rule" or "Rules" refers to the Federal Rules of Civil Procedure.

factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

### III. DISCUSSION

Defendants move to dismiss Y.V.'s Complaint, arguing that each of her eight counts are insufficiently pled as a matter of law. (*See generally* Defs.' Moving Br.) As a preliminary note applicable to all counts, Y.V.'s opposition brief to Defendants' Motion expounds greatly on the facts underlying her claims. (*See* Pl.'s Opp'n Br. *4-7.) Notwithstanding that Y.V.'s briefing paints a clearer picture of the relevant events, the Court must consider only those facts alleged in the Complaint. *Tyler v. Cruz*, No. 15-2951, 2017 WL 132842, at *5 (D.N.J. Jan. 13, 2017) ("As noted by [d]efendants, [p]laintiff may not amend [her] complaint through [her] opposition brief, and these new facts may not be considered by the Court on the instant motion to dismiss."). Through that limited lens, the Court considers each count in turn, grouping claims together that present substantially similar issues.[6]

---

[6] Y.V. does not specify which defendants engaged in what conduct. (*See generally* Compl.) A plain reading of her allegations, however, reveal that not all Defendants are involved in every act. (*Id.*) Thus, the Court refers to only those Defendants factually associated with the count, and dismisses the count as to all unreferenced Defendants. *Pushkin*, 2017 WL 1591863, at *7 (finding group pleading improper).

### A. Substantive Due Process Violation Through a Special Relationship or State Created Danger.

Up first, Y.V. raises several intertwined counts that base Defendants' liability on violations of Y.V.'s state and federal substantive due process rights. (Compl. ¶¶ 30-39 (Count One: substantive due process violation under 42 U.S.C. § 1983 based on a theory of "special relationship"), *id.* ¶¶ 40-47 (Count Two: substantive due process violations under 42 U.S.C. § 1983 based on a theory of "state-created danger"), *id.* ¶¶ 57-64 (Count Four: New Jersey substantive due process violations under a "special relationship" theory), *id.* ¶¶ 65-72 (Count Five: New Jersey substantive due process violations under a "state-created danger" theory).) Y.V. raises two theories: that Defendants had a duty to protect her from harm through the "special relationship" doctrine and, at a minimum, had a duty to not place her into dangerous circumstances under the "state-created danger" doctrine. (*Id.* ¶¶ 30-47, 57-72.)

#### 1. Special Relationship

State and federal constitutions impose limited "affirmative duties of care and protection with respect to particular individuals" on state actors. *Gonzalez v. N.J. Dep't of Child. and Families*, 545 F. Supp. 3d 178, 203 (D.N.J. 2021) (quoting *Nicini v. Morra*, 212 F.3d 798, 807 (3d Cir. 2000)). This affirmative duty attaches when the state agents place restraints on an individual's freedom to act "through imprisonment, institutionalization, or other similar restraint of personal liberty." *DeShaney v. Winnebago Cnty. Dep't of Soc. Services*, 489 U.S. 189, 190 (1989). "[W]hen the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties" and "failure to perform such duties can give rise, under *sufficiently culpable circumstances*, to liability under section 1983." *Nicini*, 212 F.3d at 808 (emphasis added). The "sufficiently culpable" conduct that must "shock the conscience" is far afield from a mere negligence standard and is determined on a case-by-case

basis. *Gonzalez*, 545 F. Supp. 3d at 203 (quoting *Nicini*, 212 F.3d at 808). In the foster care context, a plaintiff must show that the state agents acted with "deliberate indifference" or knowingly disregarded "an excessive risk to [plaintiff's] health and safety." *Id.* (quoting *Nicini*, 212 F.3d at 811).

Here, Y.V. alleges that "[Child Protection] took over for [her] care, custody, and/or guardianship" before placing her in Crudup's home. (Compl. ¶¶ 13, 30-39, 57-64.) Even accepting that Defendants collectively established a special relationship with Y.V., noticeably absent from the Complaint are *any* facts that suggest Defendants were negligent (let alone culpable) in placing her with Crudup, falling short of demonstrating "deliberate indifference" that "shocks the conscience." *Gonzalez*, 545 F. Supp. 3d at 203. Instead, Y.V. lists a series of conclusions that Defendants failed to take affirmative steps in conducting due diligence on Crudup's home, completing inspections, and providing trainings to Crudup. (Compl. ¶¶ 30-39.) Even more conclusory, Y.V. alleges without any explanation that, had Defendants taken those steps, they would have denied Crudup's application to serve as a resource family. (*Id.* ¶ 35.) As the Complaint states, Defendants had no knowledge that Y.V. was potentially in danger until a month after she left Crudup's home. (*Compare* Compl. ¶ 29, *with* Pl.'s Opp'n Br. *16.) The Court cannot accept unsupported conclusory statements as true and therefore dismisses Counts One and Four. *Twombly*, 550 U.S. at 555.

###   2.   State Created Danger

On a similar note, the state may be liable for violating an individual's state and federal constitutional rights under the state-created danger doctrine. (Compl. ¶¶ 40-47, 65-72.) To state a claim under this doctrine, plaintiffs must plead the following elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the

>  conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006). "[L]iability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger." *Id.* at 282 (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc)). A plaintiff needs to allege all four elements of the doctrine to prevail. *Id.* at 283.

Here, again, Y.V. falls short of pleading more than a bare recitation of the elements of the claim sprinkled with legal conclusions. Y.V. contends that Defendants (1) placed her in the "resource home;" (2) failed to monitor her; and (3) maintained her placement despite indications of abuse and neglect. (Compl. ¶¶ 42, 67.) But nowhere in Y.V.'s Complaint does she allege that Defendants were aware that Crudup's home was dangerous or had any reason to believe Y.V. was being abused or neglected. (*See generally* Compl.) Y.V.'s factual pleadings do not allow the Court to infer that Defendants maintained her placement with Crudup despite being on notice of potential abuse or that any of this alleged harm was foreseeable. *See Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006) (holding that for deliberate indifference to "shock the conscience," the risk must be so obvious that it can be inferred). Indeed, the Complaint reflects that it was only several weeks after Y.V. left Crudup's home that state agencies became aware of any harm. (Compl. ¶ 29.) For the same reasons as stated above, then, Y.V. fails to allege that the state agencies acted improperly, rushed the process, failed to conduct due diligence on the resource family, or ignored telltale signs

of danger, and therefore the Complaint falls short of adequately alleging that Defendants "shock[ed] the conscience" by placing Y.V. with Crudup. (Compl. ¶¶ 40-47, 65-72; *Bright*, 443 F.3d at 281.)

Because Y.V. fails to sufficiently plead all the elements required to establish a claim under the state-created danger doctrine, the Court dismisses Counts Two and Five without prejudice.

### B.   Procedural Due Process Violations.

Next, Y.V. alleges that Defendants violated her procedural due process rights under § 1983 by violating New Jersey's Child Placement Bill of Rights Act. (Compl. ¶¶ 48-56.) Under this theory, Y.V. argues that Defendants permitted her to remain in the Crudup household after being notified of possible abuse. (Pl.'s Opp'n Br. *18.) The Fourteenth Amendment guarantees that a state will not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish a claim under procedural due process, plaintiffs must allege (1) that the state deprived them of an individual interest "encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property'" and (2) that the procedures the state used "did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

Here, Y.V.'s Complaint again deploys only legal conclusions that (1) Defendants' actions deprived her of constitutionally protected interests; (2) the deprivation caused Y.V. harm; (3) Defendants' actions were inconsistent with reasonable professional judgment; and (4) Y.V. was deprived of procedural due process rights. (Compl. ¶¶ 51-54.) To plausibly suggest a procedural due process violation, Y.V. must allege that Defendants violated New Jersey statutory procedures. Although she lists several statutory rights such as the right to have the state examine her foster home and ensure that the home is suitable, absent from the Complaint are any facts that suggest Defendants violated those rights. (*Id.* ¶¶ 49-50; *see Studli v. Child. & Youth and Families Cent.*

*Reg'l Off.*, 346 F. App'x 804, 813 (3d Cir. 2009) (holding dismissal proper where defendant followed Pennsylvania's statutory procedures).) The blanket recitation of possible due process violations without any supporting facts falls short of pleading plausible allegations. *Twombly*, 550 U.S. at 555. The Court therefore dismisses Count Three without prejudice.

### C. Failure to Adequately Screen and Monitor Resource Home.

Though unclear, Y.V. next alleges what appears to be a theory of negligence associated with Defendants' duties of due diligence before assigning minors to resource homes. (Compl. ¶¶ 78-82.) Defendants highlight that the Complaint only alleges legal conclusions as to this count and, thus, it must be dismissed as a matter of law. (Defs.' Moving Br. 2.) Y.V. is silent as to opposing dismissal of this count. (*See generally* Pl.'s Opp'n Br.) As a preliminary matter, it is dubious that the administrative code sections invoked by Y.V. applies beyond resource family parents to the state actors that made the placement. N.J. Admin. Code § 10:122C (2022). In any event, Y.V. only lists the administrative requirements that resource family parents must follow but not any facts related to this case. (*See* Compl. ¶¶ 78-82.) Again, conclusory statements fail to meet the requisite pleading standard. *Moe v. Twp. of Woodbridge*, No. 19-14139, 2021 WL 3630292, at *3 (D.N.J. Aug.17, 2021) (stating that to survive a motion to dismiss where a plaintiff alleges a violation of N.J. Admin. Code § 10:122D, a plaintiff must plead facts from which the court can infer negligence or tortious conduct). The Court thus dismisses Count Seven without prejudice. *Twombly*, 550 U.S. at 555.

### D. New Jersey Child Placement Bill of Rights Act.

Fourth, Y.V. alleges that Defendants violated the New Jersey Child Placement Bill of Rights Act (the "Act"). (Compl. ¶¶ 73-77.) Defendants counter that the Complaint only provides cursory legal conclusions. (Defs.' Moving Br. 2.) In return, Y.V. argues that, by removing her from

her biological mother's home, Defendants had authority over her sufficient to state a valid claim under the Act. (Pl.'s Opp'n Br. *20.)

The Act provides that a child placed outside of his or her home has rights consistent with "the health, safety, and physical and psychological welfare of the child." N.J. Stat. Ann. § 9:6B-4 (West 2022). The state therefore is obligated to recognize and protect these rights. *Id.* § 9:6B-2(b). To state a claim under the Act, plaintiffs must plead that a defendant did not recognize or protect their rights. *Id.*

Here, while Y.V. lists several asserted legal rights under the Act, she fails to plead anything other than legal conclusions in support of this claim. (Compl. ¶¶ 73-77.) Specifically, she merely alleges that Defendants owed Y.V. a duty, breached their duty, and caused harm. (*Id.* ¶¶ 75-77.) Again, reciting the elements fails to state a proper claim. *Twombly*, 550 U.S. at 555. Rather, Y.V. must allege facts to demonstrate that Defendants did not take "reasonable measures" to protect her safety and rights to adequate necessities under the law. *K.J. ex rel. Lowry v. Div. of Youth and Fam. Servs.*, 363 F. Supp. 2d 728, 722 (D.N.J. 2005) ("[W]hen placing children outside the home, the State must take all reasonable measures to protect their safety . . . and fundamental rights to adequate food, clothing, housing, and medical care."). The Complaint fails to do so. (Compl. ¶¶ 73-77.) The Court therefore dismisses Count Six without prejudice.

### E. New Jersey Child Sexual Abuse Act

Finally, Y.V. claims that Defendants violated the New Jersey Child Sexual Abuse Act ("Abuse Act"). (Compl. ¶¶ 83-85.) Defendants again argue that the Complaint fails to allege sufficient facts. (Defs.' Moving Br. 2). Y.V. avers that the Complaint's factual allegations lead to an inference that Defendants should have removed Y.V. from Crudup's home once they learned of the abuse. (Pl.'s Opp'n Br. *22.)

Under the Abuse Act, a "passive abuser" may be liable if the person is a "parent, resource family parent, guardian or other person standing *in loco parentis* who knowingly permits or acquiesces in sexual abuse by any other person . . . ." N.J. Stat. Ann. § 2A:61B-1 (West 2022). To state a claim under the Abuse Act, then, Y.V. must plead that Defendants stood *in loco parentis* because they are not parents, resource family parents, or guardians. (*Id.*) But Y.V. pleads only legal conclusions to support this claim, stating merely that Defendants acted *in loco parentis* without any factual support. (Compl. ¶¶ 83-85; s*ee Cumberland Cnty. Bd. of Soc. Servs. v. W.J.P.*, 755 A.2d 1171, 1175 (N.J. Super Ct. App. Div. 2000) (applying *in loco parentis* doctrine in certain narrow situations, such as to stepparents under certain conditions).). Even ignoring this pleading deficiency, as described above, the Complaint lacks any facts that suggest Defendants "knowingly permitted" the sexual abuse—rather, Y.V. pleads only that the state agencies learned about the abuse allegations a month after Y.V. left Crudup's home. (Compl. ¶¶ 29; N.J. Stat. Ann. §2A:61B-1.) Thus, for similar reasons as above, the Court dismisses Count Eight without prejudice.

## IV. CONCLUSION

Y.V. fails to plead sufficient factual allegations that would allow the Court to infer a plausible claim for relief on any of the Complaint's counts.[7] The Court therefore dismisses all counts without prejudice.[8]

*[signature]*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[7] In addition, all counts engage in group pleading, referring to Defendants collectively and without addressing each Defendants' alleged actions individually. (Compl. ¶¶ 30-85; *Pushkin*, 2017 WL 1591863, at *4 (holding that a complaint referring to all defendants collectively is impermissible).) Should Y.V. file an amended complaint, she must plead sufficient facts as to *each* Defendant.

[8] Although Y.V.'s insufficient pleadings constitute a roadblock at this time, theories of qualified immunity and immunity against punitive damages loom over any future amended complaint. *See* N.J. Stat. Ann. § 59:9-2(c) (West 2022) ("No punitive . . . damages shall be awarded against a public entity."); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."). Should Y.V. file an amended complaint, she should plead facts sufficient to defeat both qualified immunity and immunity against punitive damages.

13